IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal Action No. 4:23-cr-00006 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| ISAAC JEROME GRAHAM, | ) By:   Hon. Thomas T. Cullen |
| | )         United States District Judge |
| Defendant. | ) |

Defendant Isaac Jerome Graham moves to suppress incriminating statements that he made to police officers following his arrest on suspicion of armed robbery. (Def.'s Mot. Suppress [ECF No. 43].) Graham contends that the officers who arrested him prior to his interrogation did not properly advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, Graham argues that, although the arresting officer informed him that he had the right to an attorney, that warning was constitutionally deficient because the officer failed to specify that he had the attendant rights to consult that attorney before and during questioning.

Because the Fourth Circuit has expressly concluded that police officers satisfy their obligations under *Miranda* by advising arrestees that they "have the right to an attorney" without further explaining the contours of this right, the court must deny Graham's motion to suppress his statements.

## I.   BACKGROUND

On December 28, 2022, a masked individual carrying a pistol entered the Sunrise convenience store in Danville, Virginia, and demanded money from the cashier. At some point during the armed robbery (which was captured on the store's surveillance cameras), the

perpetrator fired a single shot before fleeing the scene. An eyewitness initially reported seeing a silver Toyota Camry in the vicinity of the convenience store at the time of the robbery and provided the last four digits of its license plate number to the police.[1]

Several hours later, Danville police officers encountered Graham, who was driving the silver Toyota Camry, in the parking lot of the Sunrise. Although he was wearing different clothing than the masked individual who had robbed the store earlier in the day, officers believed that, in addition to driving the suspected getaway car, Graham matched the general description of the individual who had committed the robbery. The officers arrested Graham and placed him in the backseat of a patrol car. After securing Graham in that vehicle, one of the officers, who was wearing a body camera, advised Graham of his *Miranda* rights, saying:

> I'm just going to read you your rights, okay? You do have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney; if you cannot afford one, one will be appointed to you by the courts. Do you understand your rights?

(Def.'s Ex. 1 at 3:52 [hereinafter Bodycam Video].) In response, Graham inquired, "But what's going on?" The officer again asked, "Do you understand your rights?" This time, Graham responded, "I understand what you're saying, but what's going on?" (*Id.* at 4:02.)

Officers then transported Graham to the police station where, approximately an hour later, he was questioned about the robbery. At the outset of this interview, which was also recorded, one of the officers asked Graham if he had previously been advised of his *Miranda* rights; Graham responded, "Yeah." (Gov't Ex. 2 at 00:13 [hereinafter Interview Video].) The

---

[1] Graham claims that this purported eyewitness has recanted his or her account. But insofar as he is not challenging the circumstances leading up to and including his arrest, this is irrelevant for purposes of the motion to suppress his post-arrest statements based solely on *Miranda*.

officers then interrogated Graham about the robbery. During this interview, Graham eventually admitted that he had robbed the Sunrise and told officers that the pistol he had used (and fired) was still inside the silver Toyota Camry.[2] (Def.'s Mot. Suppress at 2; Gov't Resp. Mot. Suppress at 2–3 [ECF No. 53].) Based on those admissions, the officers searched that vehicle and recovered a Glock Model 19 9mm pistol from it.[3]

Graham was later charged with three counts: committing a Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); possessing, brandishing, and discharging a firearm during and in relation to that robbery, in violation of 18 U.S.C. § 924(c); and unlawfully possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (Indictment [ECF No. 1].) Graham has pleaded not guilty, and his trial is set for April 2024.

In support of his motion to suppress his incriminating statements, Graham submitted the body-camera footage of his arrest, which depicts the *Miranda* warnings at issue. The government, in turn, submitted footage of Graham's subsequent interview with detectives. Insofar as the parties agree that this footage fairly and accurately captured the events underlying the motion to suppress, the parties have submitted the motion to the court on this undisputed factual record and their written briefs, expressly waiving an evidentiary hearing. Graham's motion is therefore ripe for disposition.

---

[2] Graham argues that these admissions, which he contends are false, were the product of "poor interrogation tactics," but he does not allege that they were involuntary or that the interrogation otherwise ran afoul of the Constitution. (*See* Def.'s Mot. Suppress at 2.)

[3] Graham also points out that, according to surveillance video, the pistol used in the robbery appears to have an extended magazine in its well, whereas the pistol recovered from the Camry did not have an extended magazine. (Def.'s Am. Mot. Compel at 1–2 [ECF No. 45].)

## II.  DISCUSSION

Statements made during custodial interrogations must be suppressed "unless police advise the defendant of his rights under *Miranda*, and the defendant knowingly, intelligently, and voluntarily waives those rights." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017) (quoting *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012)) (cleaned up). Specifically, officers must inform the individual in custody that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney[,] one will be appointed for him." *Miranda*, 384 U.S. at 479. Although police officers must generally inform arrestees of all four rights, the Supreme Court has never mandated that they follow a particular script or exhibit uniformity in doing so. *See Florida v. Powell*, 559 U.S. 50, 60 (2010) ("[T]his Court has not dictated the words in which the essential information must be conveyed."). Ultimately, a reviewing court must determine whether the warnings given to a specific defendant "reasonably convey[ed] to [the defendant] his rights as required by *Miranda*." *Id.* (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)) (cleaned up).

As to a suspect's right to an attorney, it is well-established that this includes the right to consult with an attorney prior to police questioning, as well as the right to have one present during that questioning. *Miranda*, 384 U.S. at 471. But the Supreme Court has never required that police officers advise suspects that their right to counsel applies in those specific (or any other) circumstances, or that their failure to do so violates *Miranda*. The Fourth Circuit, however, has expressly rejected the notion that these sub-warnings are constitutionally required.

In *United States v. Frankson*, the defendant argued that the police did not adequately warn him of his right to counsel under *Miranda* because the officer did not inform him that he had the rights to confer with an attorney prior to the interrogation or to have an attorney present during the interrogation. 83 F.3d 79, 81 (4th Cir. 1996). Regarding Frankson's right to an attorney, the arresting officer had advised him, "You have the right to an attorney. If you can't afford an attorney, the Government will get one for you." *Id.* The Fourth Circuit rejected Frankson's argument that the officer's right-to-counsel charge "was not specific enough to satisfy" the requirements of *Miranda*. *Id.* at 81–82. The court explained that, although the officer had not advised the defendant that his right to counsel applied in these two specific circumstances (*i.e.*, prior to and during questioning), the general warning "communicated to Frankson that his right to an attorney began immediately and continued forward in time without qualification." *Id.* at 82. Relying on *Miranda* and its progeny, the court explained that that police are not required to provide "highly particularized warnings[,]" and that imposing such a requirement would "pose an onerous burden on police officers to accurately list all possible circumstances in which *Miranda* rights might apply." *Id.* As the court aptly concluded, "Given the common sense understanding that an unqualified statement lacks qualifications, all that police officers need [to] do is convey the general rights enumerated in *Miranda*." *Id.* Although *Frankson* was decided over 25 years ago, it remains binding authority in this circuit. *See, e.g.*, *United States v. Nash*, 739 F. App'x 762, 765 (4th Cir. 2018) (explaining that *Frankson* remains good law after the Supreme Court's 2010 decision in *Powell*, because "*Powell* stated only what is sufficient to satisfy the requirements of *Miranda*, not what is necessary.").

In this case, Graham argues that his interrogation violated *Miranda* because officers did

- 5 -

not inform him that his right to counsel "applied before and during the interrogation—the very essence of the right."[4] (Def.'s Mot. Suppress at 7.) But this argument was squarely foreclosed by the Fourth Circuit in *Frankson*, which held that police satisfy *Miranda* by informing a suspect that he has a general right to a court-appointed attorney, without specifying how and where that right could apply. 83 F.3d at 82.

Graham attempts to avoid this conclusion by distinguishing the *Miranda* warnings issued in *Frankson*. Specifically, Graham points out that, in *Frankson*, unlike in this case, the officer advised the defendant that he could decline to answer certain questions or stop the interrogation. (Def.'s Mot. Suppress at 7–8.) By adding this to the basic *Miranda* warning, Graham contends, the officer in Frankson "implied or conveyed that Mr. Graham had a right to counsel before and during questioning." (*Id.* at 8.)

Although Graham is correct that the officer in *Frankson* provided a more detailed explanation of the defendant's right to remain silent, this is not a material distinction. With respect to his right to counsel, Graham was advised: "You have the right to an attorney; if you cannot afford one, one will be appointed to you by the courts." (Bodycam Video at 3:57.) Graham's warning was nearly identical to the warning at issue in *Frankson*: "You have the right to an attorney. If you can't afford an attorney, the Government will get one for you." 83 F.3d at 81. Insofar as the Fourth Circuit held in *Frankson* that a general, unqualified statement of a right to counsel passes muster under *Miranda*, this court is constrained to conclude that the

---

[4] Graham did not expressly waive his *Miranda* rights either verbally or in writing, but impliedly through his statements after being advised—and later reminded—of those rights. Although not challenged in the instant motion, the court notes that such an implied waiver is no less valid. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (noting that the question of waiver is "not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case").

nearly identical warning in this case satisfied minimum constitutional requirements. While the arresting officer could have said more about Graham's right to counsel, he was not obligated to do so.

Finally, Graham suggests that his *Miranda* rights were violated, in part, because of the time lapse between when he was advised of his rights in the Sunrise parking lot and when he was interrogated at the police station approximately one hour later. (Def.'s Mot. Suppress at 8.) But a one-hour time lapse does not vitiate the protection afforded by the initial rights advisement. Indeed, in *Frankson*, the Fourth Circuit explicitly rejected the notion that a two-and-a-half hour time lapse from when the defendant was read his *Miranda* rights and his subsequent interrogation undermined the initial warnings. 83 F.3d at 83. In so doing, the court concluded: "The mere passage of time, however, does not compromise a *Miranda* warning. Courts have consistently upheld the integrity of Miranda warnings even in cases where 'several hours' have elapsed between the reading of the warning and the interrogation." *Id.* at 83 (quoting *United States v. Diaz*, 814 F.2d 454, 460 n.6 (7th Cir. 1987) and collecting cases); *see, e.g.*, *United States v. Weekley*, 130 F.3d 747, 750–51 (6th Cir. 1997) ("approximately one hour"); *United States v. Pennick*, No. 17-cr-15, 2018 WL 4627138, at *2 (W.D.N.Y. Feb. 27, 2018) ("over an hour") (R&R), *adopted by* 2018 WL 3120570; *Jarrell v. Balkcom*, 735 F.2d 1242, 1253–54 (11th Cir. 1984) (three hours); *United States ex rel. Henne v. Fike*, 563 F.2d 809, 814 (7th Cir. 1977) (nine hours); *United States v. Coxton*, No. 3:04-cr-248, 2006 WL 335876, at *3 (W.D.N.C. Feb. 13, 2006) (twelve hours). The time lapse in this case—significantly less than the two and a half hours at issue in *Frankson*—did not violate *Miranda*. *Frankson*, 83 F.3d at 83. Because the police officers adhered to the constitutional requirements as set forth in *Miranda*, there is no cause to

suppress his statements and his motion will be denied.

### III.   CONCLUSION

For these reasons, Graham's motion to suppress will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 1st day of December, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE